

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 3743 | DATE | Jan. 16, 2003 |
| CASE TITLE | Williams Electronic Games, Inc. v James M. Garrity, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's request for equitable relief is denied. Judgment is entered in favor of plaintiff and against defendant Garrity on count V in the amount of $78,000.00. Judgment is entered against plaintiff and for defendants on all remaining counts.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number | |
| X | Notices mailed by judge's staff. | | JAN 2 2 2003 date docketed | 459 | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK 03 JAN 21 PM 1:43 | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAMS ELECTRONIC GAMES, INC., a )
Delaware corporation, )
)
Plaintiff, )
) No. 97 C 3743
v. )
) Judge Robert W. Gettleman
JAMES M. GARRITY, ARROW ELECTRONICS, )
INC., and MILGRAY ELECTRONICS, INC., )
)
Defendants. )

DOCKETED
JAN 2 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Williams Electronic Games, Inc. ("plaintiff" or "Williams") sued its former employee, Gregory Barry and two of its former vendors, defendants Arrow Electronics, Inc. and Milgray Electronics, Inc., alleging that Arrow and Milgray through their respective employees James Garrity (Arrow) and Lawrence Gnat and Richard Slupik (Milgray), bribed Barry to purchase parts at inflated prices. In its final, third amended eight count complaint, plaintiff named as defendants Barry, his wife Lorna Barry, Garrity, Gnat and his wife Linda Gnat, Slupik, Arrow, Milgray and a company formed by Gnat and Slupik, Microcomp, Inc., alleging (1) violations of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq. (Counts I and II); (2) violations of the Sherman Act, 15 U.S.C. § 1 et seq. (Count III); (3) breach of fiduciary duty and inducement to breach fiduciary duty; (Count IV); (4) fraud and conspiracy (Count V); (5) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count VI); (6) breach of contract and restitution against Barry only (Count VII); and (7) a right to an equitable accounting and constructive trust against all defendants (Count VIII). In an unpublished opinion on September 18, 2001, the court granted

summary judgment on Counts III and VI, and all claims against Linda Gnat. Plaintiff settled its claims against Gregory and Lorna Barry, Gnat, Slupik, and Microcomp, prior to trial.

The court held a jury trial on plaintiff's remaining legal claims against Garrity, Arrow and Milgray asserted in Counts I, II and V. After the close of plaintiff's case, the court granted defendants' motion for a directed verdict on plaintiff's RICO claims alleged in Counts I and II. The jury returned a verdict in plaintiff's favor on its fraud claim against Garrity, awarding plaintiff $78,000 in damages. The jury, however, denied plaintiff's punitive damage claim. With respect to Arrow and Milgray, the jury found that plaintiff had proved all of the elements of common law fraud, but entered a verdict in favor of Arrow and Milgray, finding that both defendants had proved their affirmative defenses of ratification and in pari delicto.

Plaintiff has now moved for judgment on its remaining equitable claims asserted in Counts IV and VIII against Garrity, Arrow and Milgray. Arrow and Milgray have filed cross motions for judgment on those claims. For the reasons set forth below, based both on the jury's verdict and additional findings made by this court, plaintiff's motion for judgment is denied and judgment on the equitable claims is entered in favor of Garrity, Arrow and Milgray.

## FACTS

The court adopts the following findings of facts stipulated to by the parties in the final pretrial order:

1. Williams Electronic Games, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.

2. Milgray Electronics, Inc. distributed electronic components nationwide and maintained a branch office in northern Illinois until Bell Industries, Inc. acquired Milgray in 1997.

3. Greg Barry was employed by Williams until January 1997.

4. Lawrence Gnat was employed by Milgray until March 1997.

2

5. Richard Slupik was employed by Milgray until March 1997.

6. Shortly after she started at Williams, Kimberly Walman decided that she did not have time to supervise Barry, and instructed Barry to report to Ronald Sommers, Williams' purchasing manager. At that time, Barry was Williams' purchasing manager of electronics.

7. In 1996, Ronald Sommers, Williams' purchasing manager, told Barry to stop doing business with brokers, including Microcomp.

8. Barry initially disobeyed Sommers' order with respect to Microcomp.

9. Because Ronald Sommers was based in Chicago, Williams hired Roger Dee in October 1996 to work in Waukegan, and Dee became an on site supervisor for electrical purchasing. Her duties included supervising Barry.

10. From 1991 through 1997, Williams' contribution margin (gross profits) on pinball games ranged from 20 to 30 percent.

11. From 1991 through 1997, Williams' contribution margin (gross profits) on video games ranged from 30 to 45 percent.

12. Before the filing of this litigation, Garrity had no contact with former Procomponents employee Jim Ayala and was not informed that Ayala was making payments to Greg Barry.

13. After his first day working for Williams, in October 1996, purchasing manager Roger Dee received a phone call from an anonymous caller who informed Dee that "your buyer made $50,000 in kickbacks last year."

14. From 1990 until early 1994, Barry reported to Russell Landsberger, Williams' vice-president of purchasing and materials management.

15. Shortly after she started at Williams, Kimberly Walman decided that she did not have time to supervise Greg Barry, and instructed Barry to report to Ronald Sommers, Williams' purchasing manager. At the time, Barry was Williams' purchasing manager of electronics.

16. Sommers supervised Greg Barry until August 1996, when Roger Dee was hired as Williams' purchasing manager of electronics. At this point, Greg Barry was demoted to senior buyer of electronics.

# DISCUSSION[1]

Under Seventh Circuit precedent, when a judge makes equitable determinations in a case in which the plaintiff's legal claims have been tried first to a jury, the judge is "bound by any factual findings made or inescapably implied by the jury's verdict." Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1231 (7th Cir. 1995). Accordingly, while the court is "free to make" factual findings in addition to those made in the jury trial, the "court may not make findings 'contrary to or inconsistent with the jury's resolution . . . of th[e] same issue[s] as implicitly reflected in [the jury's] general verdict . . . on the damages claim." Ohio-Sealey Mattress Manufacturing Co. v. Sealy, Inc., 585 F.2d 821, 844 (7th Cir. 1978) (citations omitted). The court must also consider whether "necessary inferences from the verdict indicat[e] that certain views of the evidence were not taken by the jury as they could not have rationally supported the result." Ag Services of America, Inc. v. Nielsen, 231 F.3d 726, 733 (10th Cir. 2000) (emphasis in original).

Therefore, it is incumbent upon the court to outline those findings, both explicit and implicitly reflected by the jury's verdict with respect to each defendant.

## GARRITY

As noted, the jury found that plaintiff had proven the elements of common law fraud against Garrity. On the issue of damages, the jury was instructed as follows:

> If you decide for Williams on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate it for any of the following elements of damages proved by the evidence there is to have resulted from the conduct of the defendants:

---

[1] The discussion below includes both additional findings of fact as well as conclusions of law.

4

> The damages Williams proves by a preponderance of the evidence
> that is sustained by paying more for the electronic components it
> purchased than it would have paid had Gregory Barry not been
> taking kickbacks from James Garrity, Rick Slupik, or Lawrence
> Gnat.

Plaintiff presented two theories on damages. First, that defendants Arrow and Milgray were charging plaintiff too much for the parts it sold. It attempted to prove this by demonstrating that Arrow's and Milgray's gross profit percentages were too high. Second, plaintiff attempted to prove that it could have and would have bought directly from manufacturers at a cheaper price.

Based on the instructions set forth above, the jury awarded plaintiff $78,000 from Garrity, representing the amount that plaintiff "overpaid" to Arrow as a result of Garrity's kickbacks to Barry. Not coincidentally, $78,000 is the amount admitted by Garrity to have been paid by him to Barry. Inherent in this finding is the conclusion that Arrow did not "over charge" plaintiff or, put another way, plaintiff could not and would not have purchased the components for less from Arrow or anyone else absent the Garrity kickbacks. The jury quite obviously rejected plaintiff's theory that it should have received a "quantity" discount from Arrow, and just as obviously rejected plaintiff's argument that it could have and would have purchased the components cheaper direct from the a manufacturer rather than through a distributor.

Moreover, even if these conclusions are not "inherent" in the specific jury findings, the court finds that: (1) plaintiff paid a competitive rate for the components purchased from Arrow and Milgray; (2) plaintiff would have purchased from Arrow and Milgray even in the absence of the kickbacks. The evidence very clearly established that plaintiff had a total lack of control over its buying department which, during the period in question, essentially consisted of Barry. Although Barry testified at trial that his actions "hurt" plaintiff because he did not seek quotes or competitive pricing, he was thoroughly and convincingly impeached at trial with his video

5

deposition in which he specifically stated that he would have purchased from Arrow at the same price and quantities regardless of the kickbacks, because of the service Arrow provided. Thus, the court completely agrees with the jury's conclusion that the only "over payment" consisted of the amount paid back to Barry.

**ARROW**

As with Garrity, the jury found that plaintiff had proved its common law fraud claim against Arrow (presumably based on Garrity's actions), but found that Arrow had proved two of its affirmative defenses: ratification and in pari delicto, both of which Illinois recognizes as a defense to a breach of fiduciary duty claim. As to ratification, the jury was instructed as follows:

> Arrow and Milgray also assert as a defense to Williams' common law fraud claim that Williams ratified Greg Barry's illegal conduct. A plaintiff cannot claim to have been hurt by a defendant's actions if the plaintiff authorized the conduct that it now denounces. To sustain a defense of ratification, Arrow or Milgray must prove, by a preponderance of the evidence that, (1) Williams knew or should have known at the time it was happening that Barry was soliciting or accepting kickbacks from Garrity, Slupik or Gnat, and (2) Williams failed to take action to stop that behavior.
>
> If you find from your consideration of all the evidence that Arrow or Milgray proved these propositions, then you should find that Arrow or Milgray proved the defense of ratification. If, on the other hand, from your consideration of all the evidence that Arrow or Milgray did not prove these propositions then you should find that Arrow or Milgray did not prove the defense of ratification.

With respect to in pari delicto, the jury was instructed:

> Arrow and Milgray assert as a defense to Williams' claims that Williams was in pari delicto with Arrow or Milgray. In pari delicto is a Latin term meaning literally "in equal fault." It is a doctrine under which a plaintiff's recovery may be barred by its own wrongful conduct, that is, when the plaintiff has participated in some of the same sort of wrongdoing that it accuses the defendant of committing. To sustain the defense of in pari delicto, Arrow or Milgray must prove by a preponderance of the evidence either of the following propositions: (1) that Williams' management was aware of a general practice of bribery of its buyers by its suppliers, or (2) that Williams' management knew or was recklessly indifferent to the fact that Greg Barry was soliciting and/or accepting kickbacks from Williams' vendors.

6

If you find from your consideration of all the evidence that either of these propositions have been proved, then you should find that Arrow or Milgray has proved the defense of in pari delicto. If, on the other hand, you find from your consideration of all the evidence that neither of these propositions have been proved, then you should find that Arrow or Milgray has not proved the defense of in pari delicto.

By finding that Arrow (and Milgray) had sustained their burden on these defenses, the jury obviously found that plaintiff knew what was happening, but elected to ignore it as long as Barry kept the productions lines open. The court agrees, finding that there was ample evidence presented at trial to find that Williams totally ignored Barry's actions as long as parts were available when needed.

## MILGRAY

Milgray presented an additional in pari delicto defense to the jury, based on Barry helping Gnat and Slupik direct business opportunities from their employer, Milgray, to their own company, Microcomp. The jury was instructed as follows:

> In addition to the defense I just described, Milgray also asserts as a defense to Williams' claims that Williams was in pari delicto with Milgray because Williams participated in the same sort of wrongdoing against Milgray that Williams accuses Milgray of committing. To sustain this defense of in pari delicto, Milgray must prove by a preponderance of the evidence that Williams, acting through its agent Barry, knowingly participated in Slupik's and/or Gnat's unlawful diversion of business from Milgray to Microcomp.
>
> If you find from your consideration of all of the evidence that this proposition has been proved then you should find that Milgray has proved the defense of in pari delicto. If, on the other hand, you find from your consideration of all of the evidence that this proposition has not been proved, then you should find that Milgray has not proved the defense of in pari delicto.

The jury found that Milgray had proved this additional defense, meaning that plaintiff had engaged in the same sort of fraud in which Milgray (and Arrow) had engaged. Again, the court agrees. These findings, both by the jury and the court, are sufficient to support the additional

7

defense of unclean hands. See TRW Title Ins. Co. v. Security Union Title Ins. Co., 153 F.3d 822, 829 (7th Cir. 1988).

Despite the jury's verdict, plaintiff argues that the court should exercise its discretion and award it a disgorgement of each defendant's profits based on the jury's finding of fraud. In effect, plaintiff asks the court to accept all of the jury's findings in its favor, but ignore all the jury's adverse findings. To reach this position, plaintiff first argues that under Illinois law a defendant found guilty of fraud is barred from raising affirmative defenses against equitable claims. At first glance, this argument makes little sense, for if affirmative defenses are available to the fraud itself, there should be no reason for them to be unavailable against the equitable claims based on the fraud. Not surprisingly, plaintiff has provided no case that recites any such rule. The case plaintiff cites in support of this proposition, did not involve both legal and equitable claims and did not recite any such rule. The case originally cited by plaintiff for the proposition that a party cannot derive any benefit from a fraud is a 1941 Illinois Supreme Court case that does not address the availability of affirmative defenses, equitable or otherwise, to parties that have engaged in fraudulent conduct. See, Callner v. Greenberg, 33 N.E.2d 437 (Ill. 1941).

In Callner, the plaintiff, Callner, held a junior mortgage in real estate owned by one of the defendants. The defendants defrauded Callner by not giving him notice of a foreclosure proceeding held on the property, thus depriving him of the right to bid or redeem his mortgage at the proceeding. Callner, 33 N.E.2d at 438. When Callner discovered what happened, it was too late for him to make a statutory redemption. Callner sued and the defendant argued that it was too late for Callner to obtain statutory redemption, and thus argued that the plaintiff could seek only one of two alternative remedies. Rejecting this proposition, the court held that "[o]ne who

8

is guilty of fraud cannot complain that his victim elected one of two or more remedies available." Callner, 33 N.E.2d at 439. As noted by Arrow, Callner does not involve an affirmative defense based on the plaintiff's misconduct toward the defendants, nor does it discuss any of the defenses at issue in the instant case.

Plaintiff's citations to other Illinois cases[2] are equally inapplicable and unavailing since not a single court stated that where a party acted fraudulently, such party was denied the opportunity to raise an equitable affirmative defense. As stated by Arrow, "[n]ot one of the numerous cases cited (and mis-cited) by Williams stands for the proposition that the equitable defenses of in pari delicto, unclean hands or ratification are somehow 'nullified' once the plaintiff proves the prima facie elements of fraud.... Most of the cases cited by Williams stand for the unremarkable proposition that a defendant who fails to prove an affirmative defense cannot avail itself of that defense." See generally, Semmens v. Semmens, 396 N.E.2d 1282, 1286-1287 (Ill. App. Ct. 1979) (where party committed a fraud on the court because harm resulting from fraud was to the court, rather than the opposing party, court rejected that party's assertion of in pari delicto, laches or equitable estoppel); Fruhling v. Champaign County, 420 N.E.2d 1066, 1070-1071 (Ill. App. Ct. 1981) (laches was not available where the plaintiff's wrongful conduct was not "a prejudicial act to defendants" but to another party, and thus defendants failed to establish the necessary prejudice element in order to apply laches); Baal v. McDonald's Corp.,

---

[2]While plaintiff cites to a single Fifth Circuit case Regional Properties v. Financial & Real Estate Consulting, 752 F.2d 178 (5th Cir. 1985), applying Texas law, holding that the affirmative defenses of laches, estoppel and waiver cannot be successfully asserted by a defendant in a contract rescission action if the defendant comes to the court with unclean hands, defendants counter that by citing cases from other jurisdictions directly on point holding that a party can assert the affirmative defense of unclean hands regardless of the improper behavior of the defendant. See Mas v. Coca-Cola, Co., 163 F.2d 505, 510-11 (4th Cir. 1947); Banco Industrial de Venezuela, C.A. v. Credit Suisse, 99 F.3d 1045, 1047-51 (11th Cir. 1996).

9

422 N.E.2d 1166, 1171 (Ill. App. Ct. 1981) (unclean hands did not apply where the plaintiff's bad acts did not affect the defendant); Ellis v. Photo America Corp., 447 N.E.2d 852, 856 (Ill. App. Ct. 1983) (same).

Illinois courts have, in fact, denied a plaintiff recovery for a defendant's fraudulent conduct based on the plaintiff's actions taken after such conduct occurred. In Bulley & Andrews, Inc. v. Symons Corp., 323 N.E.2d 806, 810-811 (Ill. App. Ct. 1975), the court held that regardless of the fact that the defendant fraudulently induced the plaintiff into entering into a contract, the plaintiff waived its right to any relief from such fraud because the plaintiff remained silent on the matter after it became aware of the fraud and continued to work under the contract. The Bulley court quoted from an Illinois Supreme Court opinion in Eisenberg v. Goldstein, 195 N.E.2d 184, 186-187 (Ill. 1963):

> A person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence, so as to afford both parties an opportunity to be restored to their original position. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations.

Bulley, 323 N.E.2d at 810.

Based on the above, and the lack of any Illinois case law directly on point precluding a defendant from asserting affirmative defenses to equitable claims arising from a defendant's fraudulent conduct, the court rejects plaintiff's argument that defendants are precluded from asserting affirmative defenses to those claims alleged by plaintiff.

Therefore, based on a jury's verdict and the findings inherent in that verdict, as well as the court's findings, the court concludes that plaintiff is not entitled to any equitable relief based on its own ratification of any of the illegal conduct, as well as the doctrine of unclean hands.

Moreover, even if plaintiff is correct that Arrow and Milgray are unable to assert their affirmative defenses, the court declines to exercise any discretion it may have to award equitable relief. It is obvious that plaintiff is dissatisfied with the amount of the jury's verdict. As defendant Garrity succinctly states, plaintiff "seeks the use of this court's equitable powers to increase its recovery in this case." Yet, plaintiff asked the jury to award it millions of dollars in damages which, if proved, would have provided plaintiff with a complete and adequate remedy at law. Plaintiff's problem is not with the availability of a remedy, but with its own inability to support its claim for damages with convincing evidence. Simply put, plaintiff's case, which lasted over two weeks and included introduction of thousands of documents, utterly failed to convince the jury or this court that plaintiff was harmed in any way by the kickbacks to Barry, except perhaps by Barry's failure to return the kickbacks to plaintiff. Yet even on this point, plaintiff's evidence was unpersuasive and rejected by the jury. By finding Garrity liable in the amount of $78,000, the jury obviously believed Garrity over plaintiff's star witness, Greg Barry, as to the amounts of payments made.

Plaintiff couches its equitable claims as a request for restitution, which is basically defined as a restoration of a loss. Black's Law Dictionary, Seventh Addition. Yet it established no damages, and no loss resulting from the payments to its buyer. Plaintiff received the parts it needed, at a price that was competitive and it would have paid absent the payments. There is nothing to be restored. To award plaintiff disgorgement of all of defendants' profits on transactions that the evidence established would have been made on the same terms absent the illegal payments would not result in equity, but in a windfall to plaintiff.

Equitable remedies such as those requested by plaintiff are generally not available when there exists an adequate remedy at law. LaSalle National Bank v. Refrigerated Transport

11

Company, 165 Ill. App. 3d 899, 900 (1st Dist. 1987). A remedy at law is adequate if it is clear, complete and as practical and efficient to the ends of justice and its prompt administration as an equitable remedy. Id. The object of plaintiff's request for "disgorgement" is a monetary recovery. Therefore, its request to the jury for damages was "as practical and efficient to the ends of justice" as the requested equitable remedy. "Equity does not entertain complaints the fundamental object of which is to secure monetary damages." Id. Plaintiff had an adequate remedy at law. Its request for equitable relief is denied. Judgment is entered in favor of plaintiff against Garrity on Count V in the sum of $78,000. Judgment is entered against plaintiff and for defendants on all remaining counts.

**ENTER:** **January 16, 2003**

/s/ Robert W. Gettleman

**Robert W. Gettleman**
**United States District Judge**