IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAMS ELECTRONICS GAMES, INC., ET AL., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 97 C 3743 |
| JAMES M. GARRITY, ARROW ELECTRONICS, INC., AND MILGRAY ELECTRONICS, INC. | ) Hon. Mark Filip ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Williams Electronics Games, Inc. ("Williams") and National Union Fire

Insurance Company ("National Union," and together with Williams, "Plaintiffs"), are suing

Defendants, James M. Garrity, Arrow Electronics, Inc., and Milgray Electronics, Inc.

(collectively, "Defendants"), relating to alleged misconduct by Defendants in connection with

their provision of component parts for Williams's *Mortal Kombat* video game.[1] The suit as

originally framed included two counts alleging civil violations of the Racketeer Influenced and

Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Counts I and II). (D.E. 1 at 14-

17.) The suit did not fall within the diversity jurisdiction of the federal courts. (*See id.* at 2-3

---

[1]     *Mortal Kombat* is a highly controversial and very commercially successful videogame that has garnered significant attention for its "mix of realism and violence." http://en.wikipedia.org/wiki/Mortal_Kombat. *Mortal Kombat* apparently has introduced a number of innovations in its fight-to-the-death, hand-to-hand combat scenario. "An example of the game's innovations was the Fatality, a special finishing move executed against a beaten opponent to kill them in a gruesome fashion. For example, one character would grasp a defeated opponent by the head, then rip off head and spine while the body crumpled to the ground in a pool of blood. Fatalities could only be executed after you had defeated your opponent in combat, and essentially served as a memorable and gruesome sort of victory dance." *Id.* There apparently have been a number of other noted measures that the game has introduced. *See id.*

(discussing citizenship of parties, including Plaintiff Williams, a company whose principal place of business is in Chicago).) The operative complaint underwent various iterations—which included, for example, a since-dismissed Sherman Act claim (*e.g.*, D.E. 221 at 24)—but suffice to say that there are no longer any federal claims in the case. (The Sherman Act claim was dismissed on summary judgment by Judge Gettleman in 2001, and the RICO claims were dismissed at the conclusion of the Plaintiffs' case for failure of proof, during the middle of a jury trial held before Judge Gettleman that spanned from February 19, 2002, to March 14, 2002, which dismissals were all affirmed on appeal.) In addition, the case as presently framed could not be properly filed in the federal courts under the grant of diversity jurisdiction, as Plaintiff Williams is an Illinois corporation with its principal place of business in Chicago (*id.* at 2), and there is at least one defendant who is an Illinois citizen (*see id.* at 3 (discussing Defendant Garrity).)[2]

The case came to this Court after a partial reversal on appeal, which reversal overturned a jury verdict against Plaintiffs on certain state law claims, as discussed further below. The parties naturally contemplate the likelihood of another trial on those state law claims. To be entirely fair, Plaintiffs also seek summary judgment on one state law claim; while this Court need not, for reasons explained below, pass definitively on that motion, Plaintiffs surely must appreciate that it is a long-shot, given the numerous disputed factual questions in the case, including what the

---

[2] There may be one or more other Defendants who are Illinois citizens. The operative complaint does not discuss fully the citizenship of the corporate Defendants. (*See* D.E. 221 at 3 (stating that Arrow is a Delaware corporation, but not describing its principal place of business); *id.* (stating that Defendant Milgray is a New York corporation and stating that it is "the successor by merger to Milgray/Chicago, Inc.," but not describing any principal place of business and containing other averments which suggest that its principal place of business might not be in Chicago).)

Seventh Circuit expressly noted was a "fierce dispute" about issues relating to certain alleged commercial bribery that is implicated by the pending motion. *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 572 (7th Cir. 2004). As a result, there will likely be a forthcoming trial, whether it occurs state or in federal court. (*Accord* D.E. 534 at 304 (Plaintiffs estimating a trial of some two weeks' duration, assuming they prevail on certain pretrial motions *in limine*; Defendants estimating a trial of three to four weeks' duration).)

Caselaw in this circuit establishes a "presumption" against district courts retaining jurisdiction over supplemental state law claims after the federal claims (and concomitant federal interest) have disappeared from a case. Thus, for example, *Groce v. Eli Lilly & Co.*, 193 F.3d 496 (7th Cir. 1999), "emphasize[d] that it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Id.* at 501. *Groce* further taught that "there is a presumption against retaining jurisdiction of supplemental state law claims" in such instances. *Id.* (citing *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)); *accord, e.g., Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001). This presumption is simply that—a presumption, not a rule—but it is one rooted in well-established principles, including the need to afford litigants who actually have cases in which there is a federal interest as expeditious a form of justice as is reasonably possible, and a substantial comity interest in allowing state courts to apply and to interpret their own laws, at least in cases where there is no federal interest at stake. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998) ("'[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become [a] paramount concern.'")

3

(quoting *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)); *Wis. Cent. Ltd. v. Public Servs. Comm'n of Wis.*, 95 F.3d 1359, 1366 (7th Cir. 1996) (discussing the "strong" interest "in allowing a state first crack at interpreting its own laws"). The presumption established in cases such as *Groce* is part of a broader duty that district courts have to exercise their informed discretion so as to make judgments concerning whether it is prudent to exercise and/or maintain supplemental jurisdiction over state law claims, which duty exists at all phases of a litigation.

As explained at length below, and after careful consideration of the relevant factors first identified in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and reflected in 28 U.S.C. § 1367, concerning the retention of supplemental jurisdiction, the Court determines that this case most sensibly should proceed in state court. *See Gibbs*, 383 U.S. at 727 (teaching that the issue of whether pendent jurisdiction is appropriate "remains open throughout the litigation"); *accord, e.g., City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (teaching that a district court, in considering the factors set forth in 28 U.S.C. § 1367(c), "'should consider and weigh [relevant statutory factors] in each case, and at every stage of the litigation'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). While the Court certainly does not purport to adopt any rigid rule by its decision, the facts that:

(1)    there is no federal question or interest remaining in the case;

(2)    there are meaningful open and/or complex questions of state law which likely will need to be resolved in connection with the trial;

(3)    this Court has no comparative efficiency advantage (as compared to a state trial court) in providing a trial;

(4)    no prejudice will accrue to the parties if the case proceeds in state courts; and

(5)    retaining jurisdiction to try this case outside the diversity or federal question

4

jurisdiction of the federal courts will inevitably delay the adjudication and/or trial of other cases squarely within the jurisdiction of the federal courts,

individually and collectively counsel that this Court should follow the presumptive practice of relinquishing jurisdiction over supplemental state claims in favor of the state courts. Accordingly, the state law claims are dismissed without prejudice so that Plaintiffs may proceed with them in the Illinois courts. *Accord, e.g., Groce*, 193 F.3d at 501.

I.     General Background

The Court assumes the parties' familiarity with the general procedural history. Accordingly, the Court addresses the procedural history and relevant facts only as necessary to explain the instant decision.

A.     Earlier Proceedings Before Judge Gettleman in the District Court and The Affirmance on Appeal of The Dismissal of All Federal Claims

In May 1997, Williams, the manufacturer of the *Mortal Kombat* video game, initiated suit for fraud and related misconduct, alleging two federal civil RICO claims and several state law claims, against, among others, Defendant James Garrity ("Garrity"), a sales executive from Arrow Electronics, Inc. (D.E. 1.) The complaint thereafter went through various amendments, which, among other things, added present Defendants Arrow Electronic, Inc. ("Arrow") and Milgray Electronics, Inc. ("Milgray"), two of Williams's suppliers of components for *Mortal Kombat*, and the complaint also added a Sherman Act claim. (*E.g.*, D.E. 221.)

As framed in the operative complaint, Williams claims that Defendants bribed one of its purchasing managers, Greg Barry ("Barry"), with more than $100,000 in bribes and kickbacks over a four-year period, during which time Defendants sold Williams approximately $100 million in component parts for *Mortal Kombat* games. (*See* D.E. 221 at 7-19); *see also Williams*,

5

366 F.3d at 572. (It appears that Barry solicited these monies from Garrity, as well as monies from salespersons of other vendors, and it is undisputed that he solicited monies in the total amount of some $1.2 million; it is also undisputed that, as a result, Barry was indicted by federal authorities on mail fraud and other charges, pleaded guilty, and was sentenced to some 3.5 years in prison. (D.E. 560 ¶ 71; D.E. 539 ¶ 10.)) The case proceeded before Judge Gettleman.

The operative complaint leading up to a 2001 trial before Judge Gettleman contained two alleged violations of the civil RICO statute (Counts I and II) and an alleged violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* (Count III). (D.E. 221 at 20-24.) It also alleged various state law claims, all under Illinois law: breach of fiduciary duty and inducement to breach of fiduciary duty (Count IV); common law fraud and conspiracy (Count V); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), 815 ILCS 505/1, *et seq.* (Count VI); breach of contract and restitution against one defendant no longer in the case (Count VII); and a demand for an equitable accounting and constructive trust (Count VIII). (D.E. 221 at 24-29.)

In September 2001, Judge Gettleman granted summary judgment on Count III, the Sherman Act claim, and Count VI, the Illinois CFDBPA claim. (D.E. 304.) Thereafter, the Court held a jury trial on the remaining legal claims against Defendants Garrity, Arrow, and Milgray that were asserted in Counts I, II and V. (D.E. 459 at 2.) After the close of Plaintiffs' case, Judge Gettleman granted Defendants' motion for a directed verdict on the RICO claims in Counts I and II. (*Id.*) The jury then proceeded to deliberate on the evidence it had heard and found that Plaintiffs had proved all of the elements of common law fraud as to each of the Defendants, but it entered a verdict in favor of Arrow and Milgray, finding that they proved the

affirmative defenses of ratification and *in pari delicto*. (*Id.* at 2.) Based on, *inter alia*, the jury's exoneration of Arrow and Milgray, Judge Gettleman denied Williams's motion for judgment on the remaining equitable claims asserted in Counts IV (inducement of breach of duty claim) and VIII (equitable accounting and constructive trust claim). (*Id.*)

Williams appealed the jury's verdict regarding the fraud count and Judge Gettleman's rulings regarding the RICO and Sherman Act claims and the remaining equitable claims. On appeal, the Seventh Circuit affirmed Judge Gettleman's dismissal of the RICO and Sherman Act claims. *Williams*, 366 F.3d at 578-80. With respect to the state law claims, the Seventh Circuit found that the jury instructions on the affirmative defenses to the fraud count were erroneous, and ultimately reversed and remanded not only the jury's finding with respect to the affirmative defenses, but also the jury's finding of *prima facie* fraud. *Id.* at 575. Judge Gettleman's ruling on the claims for equitable relief, denying such relief, also was reversed and remanded. *Id.* at 578.

B.    Proceedings Before This Court

Following the appeal, the case was reassigned to this Court. (D.E. 532.) As the case presently sits in the district court, there is indisputably no pending federal claim or federal question at issue. (D.E. 534 at 2.)

Thereafter, Williams filed a summary judgment motion, in which it contended that it is entitled to summary judgment, as to liability, on Count IV, which alleges a breach of fiduciary duty and loyalty and inducement of the same under Illinois law against the Defendants, all in relation to their alleged culpability for the bribes paid to (and apparently solicited by) Barry, Williams's purchasing agent. (D.E. 539.) In the course of taking a preliminary review of that

7

motion, three things became clear to this Court. First, there appear to be numerous disputed and/or open issues of material fact in the case. *See, e.g., Williams*, 366 F.3d at 572 (noting the "matter of fierce dispute" concerning, *inter alia*, when Williams discovered certain bribe-taking and whether the company even cared about the bribe-taking because "it was getting a good price and excellent service from Arrow and Milgray"). (*See also, e.g.*, D.E. 551 at 20-22, 24-26, 29-30.) Second, resolving the case likely will implicate various questions of state law, the answers to which are debatable and complex. And, third, there is no federal claim, question, or interest left in this case, nor is there a federal interest in displacing those numerous pending cases in which there is a substantial federal interest so as to have a trial of substantial length in this one. In this regard, the Court also notes that the lead Plaintiff, Williams, is an Illinois corporation, so (and as discussed further below) there is no reason even to speculate about whether it would be exposed to any illicit type of bias in the state courts. *See generally* 28 U.S.C. § 1441(b).

On August 25, 2005, the Court *sua sponte* granted the parties an opportunity to file simultaneous briefs explaining the basis for the exercise of federal jurisdiction over the remaining claims in this case and also to address the subject of continued federal jurisdiction generally. (D.E. 566.) The parties each filed briefs weighing in on the issues. (D.E. 567, 569, 570, 571.) As the briefs reflected, the Court must make an informed exercise of its discretion to determine whether continued exercise of supplemental jurisdiction over the state law-only claims is the most prudent course. For the reasons discussed below, the Court believes that the considerations which underlie the analysis of whether continued exercise of federal, as opposed to state, jurisdiction counsel in favor of following the presumptive practice of dismissing the remaining claims without prejudice here.

8

II.    Discussion

The only possible means by which the Court could continue to exercise jurisdiction over Plaintiffs' remaining state law claims is 28 U.S.C. § 1367(a). Section 1367(a) authorizes a federal court to exercise supplemental jurisdiction over state law claims, but it does not mandate that the court exercise such jurisdiction, either initially or as a case progresses. 28 U.S.C. § 1367(a). Instead, section 1367(c) provides that a district court "may decline to exercise supplemental jurisdiction" where (1) the claim raises a novel or complex issue of state law, (2) the state law claim(s) substantially predominate over the federal claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, where there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Where a condition described in section 1367(c) is present, "a federal court must choose the course that 'best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine.'" *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997)). Supreme Court precedent instructs that a district court, in considering the factors set forth in section 1367(c), "'should consider and weigh [these principles] in each case, and at every stage of the litigation.'" *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

As mentioned, caselaw teaches that the well-settled and presumptive practice in this circuit is not to exercise supplemental jurisdiction over such claims where, as here, all federal jurisdictional claims have been dismissed and only the state law claims remain for trial. *See, e.g., Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Courts are to exercise their

9

considered discretion in making an assessment about the propriety of continued retention of jurisdiction of claims under section 1367. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998) (quoting *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)).

With this framework in mind, the Court finds that, weighing the various factors, it should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *Accord, e.g., Centres*, 148 F.3d at 704. Based on the Seventh Circuit's remand of the fraud verdict, as well as the Court's initial review of Plaintiffs' summary judgment motion, there is a substantial likelihood of a second trial with respect to the fraud claim and/or with respect to the remaining equitable claims. The parties apparently disagree on the anticipated length of such trial, with Plaintiffs estimating two weeks and Defendants estimating between three and four weeks. (D.E. 534 at 3-4.) Where there is a forthcoming trial on state law-only claims within the supplemental jurisdiction, the typical practice is to dismiss such claims without prejudice so that the case can proceed to trial before the courts of the State of Illinois, which obviously have a strong interest in applying and interpreting their state's own laws. *See, e.g., Groce*, 193 F.3d at 501 (citing *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

In addition, the principle of comity weighs in favor of dismissal of the remaining state law claims without prejudice so that the case may proceed in state court. In the process of undertaking a preliminary review of Plaintiffs' motion for summary judgment with respect to Count IV only, the Court identified various complex and debatable questions of state law, which, as discussed below, are intertwined with potential questions of material fact. *See, e.g., Kennedy*, 140 F.3d at 728 (teaching that when federal claims drop out of a case, and only state law claims

remain, "'respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become [a] paramount concern'") (quoting *Huffman*, 865 F.2d at 923)); *accord Wis. Cent. Ltd. v. Public Servs. Comm'n of Wis.*, 95 F.3d 1359, 1366 (7th Cir. 1996) (identifying "strong" interest in allowing the state courts to have the opportunity to interpret their own laws). For example, while the relevant state law principle concerning the pending summary judgment may be established at a broad level of generality—*i.e.*, a third party who colludes with a fiduciary in committing a breach of the fiduciary's duty, and who benefits thereby, is under a duty of restitution to the beneficiary, *Chicago Park Dist. v. Kenroy, Inc.*, 402 N.E.2d 181, 186 (Ill. 1980)—the mapping of this rule onto the facts of the case *sub judice* is far less evident. For example, there are factual and legal questions with respect to whether employees, in making payments to Barry, were acting within the scope of their employment with Defendants Arrow and Milgray. Illinois courts have not accorded a precise definition to the term "scope of employment." *Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. Ct. 1981). As a result, the outer limits of "scope of employment" appear to be unsettled under Illinois law. *Compare Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996) ("[A]n employer is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of an authorized result. Serious crimes are generally unforeseeable because they are different in nature from what employees in a lawful occupation are expected to do. Further, if a deviation is exceedingly marked and unusual, the employee may be found to be outside the scope of employment as a matter of law.") (internal citations omitted),[3] *with Maras v. Milestone, Inc.*, 809

---

[3]      *See also Hidden Cove Marina, Inc. v. Newell*, No. 86 C 2742, 1990 WL 43525, at *6 (N.D. Ill. Apr. 6, 1990) ("[B]ribery . . . is an illegal act [which] cannot be within the scope of [the officer's] legitimate employment").

N.E.2d 825, 828 (Ill. App. Ct. 2004) (an employer is liable for the "criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer").[4]

Likewise, in its opinion remanding the case, the Seventh Circuit stated that it is a "matter of fierce dispute" that the "company may have been careless in failing to discover the bribes sooner; it may even have known about the bribes but not cared because it thought it was getting a good price and excellent service from Arrow and Milgray." *Williams*, 366 F.3d at 572. To the extent Williams was reckless or knowledgeable with respect to the bribes, it certainly would not have been defrauded, *see id.*, 366 F.3d at 574, and it is unsettled or at least debatable under Illinois law whether the doctrine of unclean hands bars Williams from obtaining equitable relief. *Compare, e.g., Fair Automotive Repair, Inc. v. Car Service Sys., Inc.*, 471 N.E.2d 554, 558 (Ill. App. Ct. 1984) (stating broadly that "one seeking equitable relief cannot take advantage of his own wrong," and that "[e]quitable relief may be denied if the applicant is guilty of," *inter alia*, "misconduct" in connection with the relevant transaction toward the defendant) (collecting

---

[4]    Illinois precedent also reflects that these "scope of employment" issues often are left to the jury to resolve—*see, e.g., Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. Ct. 1981)—reinforcing the likelihood that a trial will eventuate and reinforcing the applicability of the teaching in cases like *Groce* that, in such instances, the trial of the supplemental state law claims normally should proceed in state court. The Court also notes that prior to the first trial, Williams unsuccessfully moved for summary judgment on, *inter alia*, Count IV. Judge Gettleman denied the request for summary judgment on Count IV, having found there was a genuine issue of material fact "as to whether Arrow has been unjustly enriched by Garrity's alleged payments." (D.E. 141 at 2.) Judge Gettleman later denied a motion to reconsider the denial of summary judgment, stating that, "because Barry testified that he might have purchased the same parts for the same prices from Arrow absent the breach of duty, there is a question of fact as to whether Arrow obtained any benefit from the breach." *Williams Elecs. Games v. Barry*, et al., No. 97 C 3743, 1999 WL 971289, at *1 (N.D. Ill. Oct. 20, 1999). These decisions further confirm the likelihood of another trial.

cases), *with Jaffe Comm. Fin. Co. v. Harris*, 456 N.E.2d 224, 228 (Ill. App. Ct. 1983) (suggesting

that only fraud or bad faith will suffice). It is, of course, difficult to predict exactly how these

various potential complex or unsettled questions of state law may be implicated as the trial

unfolds, but that uncertainty militates in favor of allowing the courts of the State of Illinois to be

positioned to address the unresolved legal questions that may well eventuate. Indeed, although

Williams in particular argues with substantial vitriol that all of the legal questions in the case,

including those concerning Count IV, are clearcut, the briefs of Arrow and Milgray, in particular,

demonstrate that the legal questions under Illinois law are, at a minimum, nuanced and debatable.

Under such circumstances, the teaching of *Gibbs* and its progeny counsels in favor of allowing

the courts of the State of Illinois to address any inconsistencies, ambiguities, or gaps in state law.

*See Gibbs*, 383 U.S. at 726; *Wis. Cent. Ltd.*, 95 F.3d at 1366. That is because no decision by this

Court—indeed, not even a decision of the United States Supreme Court (which, of course, never

would grant *certiorari* to address a state law issue)—can resolve unsettled or debatable questions

of Illinois law. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).[5]

The Court notes that this case is not like the cases cited wherein the federal and state

claims have already gone to trial, only state claims remain, and the district court exercises

supplemental jurisdiction over the remaining claims on the ground that sending the claims to

---

[5]     One of Williams's own citations, *Wright v. Associated Insurance Companies, Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994), teaches that "retention of a state-law claim is appropriate when the correct disposition of the claim is 'so clear as a matter of state law that it can be determined without any further trial proceedings and without entanglement with any difficult issues of state law.'" *Id.* at 1252 (quoting *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993)). As explained above, and as reflected in the summary judgment papers of Arrow and Milgray, this case falls outside the scenario described in *Wright* where departure from the presumptive practice of dismissing state law claims without prejudice in favor of retention of supplemental jurisdiction is warranted.

state court would unnecessarily require "substantial duplication of effort." (D.E. 570 at 4) (citing, *e.g.*, *Miller Aviation v. Milwaukee County. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001).)[6] Unlike that situation, the case *sub judice* was recently reassigned to this Court and a trial on remand has not yet occurred; thus, the "duplication of effort"—including the parties' respective responsibilities to familiarize a new judge with the relevant factual and legal issues and the likely need to prepare for a new trial with respect to these issues—will be the same whether the remaining state law claims proceed in this Court or in state court.

Williams implies that inefficiencies may result, if the case proceeds henceforth in the state judicial system, because "the parties have devoted substantial resources to completing discovery and litigating issues under federal procedures." (D.E. 570 at 3.) Williams also suggests that transfer to the Illinois courts "threatens substantial duplication in pleading, discovery, and motion practice . . . ." (*Id.*) Williams provides no citation in support of its gloomy contentions regarding practice in Illinois in these instances, and its contentions are contrary to this Court's understanding of how litigation proceeds here—which understanding is based on, *inter alia*, practice as a member of a law firm that litigates cases routinely in state and

---

6        Notably, *Miller Aviation* is the only case cited by Plaintiffs in which it was found that a district court abused its discretion in declining to exercise supplemental jurisdiction. In that case, there was no assignment of a new judge, as is the case here, nor any unsettled or complex issues of state law or even unresolved questions of material fact. The majority of cases cited by Plaintiffs deal with the opposite issue as presented here—whether the district court abused its discretion in retaining supplemental jurisdiction. *See, e.g., Binz v. Brandt*, 301 F.3d 529, 532 (7th Cir. 2002); *Tomaiolo v. Mallinoff*, 281 F.3d 1, 11 (1st Cir. 2002); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191-92 (2d Cir. 1996). Those cases are not instructive, as this Court is not finding that it could not lawfully retain supplemental jurisdiction, but rather is finding that following the presumptive course of relinquishing supplemental jurisdiction is, all things considered, the more sensible course here. In multiple other cases cited by Plaintiffs, the appeals court upheld the district court's decision to decline jurisdiction. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998).

federal courts in Chicago, as well as judicial experience. In this regard, the Court notes that cases are moved from federal to state court after the completion of discovery all the time. In fact, that is the presumptive course for cases in which, as happens not infrequently in advance of a trial, the federal claims drop out of the case. This Court is aware of no instance—none—in which parties needed to reopen otherwise completed discovery or could not use their completed discovery, or in which anything resembling such a result occurred. Moreover, to the extent that Williams suggests that it briefed its summary judgment motion as to Count IV (which was rejected twice by Judge Gettleman, and which appears to be in substantial tension with the Seventh Circuit's statement in *Williams* that there was a "fierce dispute" factually about whether Williams knew about the bribery), Williams is certainly free to recaption its motion and seek to refile it in state court. Williams can hardly argue that the Illinois courts are illegitimate tribunals to address the state law questions it seeks to present. *See generally Erie*, 304 U.S. at 79 ("'The authority and only authority [regarding questions of state law] is the State, and if that be so, the voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word.'") (quoting *Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.* 276 U.S. 518, 535 (1928) (Holmes, J., dissenting, joined by Brandeis and Stone, JJ.)); *see also Black & White Taxicab*, 276 U.S. 518, 533 (1928) (Holmes, J., dissenting, joined by Brandeis and Stone, JJ.) ("The common law so far as it is enforced in a State, whether called common law or not, is not the common law generally but the law of that State existing by authority of that State . . . ."); *Kennedy*, 140 F.3d at 728.[7]

---

[7]    It is by no means clear that Williams is primarily suggesting that it based its motion on the legal analysis of the state law claims in the *Williams* decision, as opposed to on Fed. R. Civ. P. 56 and the record that was assembled under the Federal Rules of Civil Procedure.

Moreover, to the extent that Williams implicitly suggests that this Court specifically, or the federal judicial system generally, is more capable of resolving the heated factual disputes and open questions of state law potentially implicated by the case, precedent and simple humility counsel in favor of rejection of that contention. Precedent teaches that "state courts are just as able as federal courts," *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 826 (1990), and they naturally are more expert at applying state law than federal courts, *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). *Accord, e.g., Schlesinger v. Councilman*, 420 U.S. 738, 755 (1975) ("State courts are quite as capable as federal courts of determining the facts, and they alone can define and interpret state law."); *Gibbs*, 383 U.S. at 726-27 (teaching that, when assessing the propriety of exercising or retaining supplemental jurisdiction, federal courts should avoid making needless decisions of state law "as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law").

In assessing the propriety of continuing with or relinquishing supplemental jurisdiction, the Court has considered whether there is any reasonable basis to suspect that either side will be subjected to unfair or undue prejudice. The Defendants all state that they are happy to remain in federal court, if that is the course that is selected, but acknowledge that the considerations

---

(*See* D.E. 570 at 3.) Because the discovery record surely will be usable in state court (as it always is, in this Court's experience), such a concern does not justify retention of the case in federal court. Moreover, the Illinois courts of course have a summary judgment procedure, which Williams's experienced and distinguished counsel have surely employed many times. To be sure, one might need to insert some citations concerning summary judgment standards under Illinois law, and tweak summary judgment filings so as to comport with local rules of the state trial court, but such adjustments can be efficiently accomplished in an age of electronic files and desktop printing. While the Court does not suggest that these efforts will take no time whatsoever, the limited efforts entailed do not justify departure from the presumptive practice and the retention of this case in federal court.

identified in precedent likely counsel a different step. (*E.g.*, D.E. 567 at 1 (citing *Gibbs*, 383 U.S. at 727-28); D.E. 569 at 1 (citing *Kennedy*, 140 F.3d at 727).) Williams objects, but it is difficult to understand how Williams, a Chicago corporation and employer, will be subjected to unfairness in the local forum. Moreover, it bears mention that the Court—as part of its continuing responsibility to assess the prudence of retaining supplemental jurisdiction over claims in which no federal interest is presented—and not Defendants raised the issue of whether the factors identified in the precedent justified keeping the case here. Thus, there is not even any circumstantial indication that the Defendants believe they will get any better shake in the state courts, much less an unfairly beneficial one.

The Court also respectfully rejects Williams's suggestion that this case is fairly analogized to those where a district judge who personally had presided over extensive pretrial and motion practice, and thus had acquired an extensive familiarity with the factual record and the salient legal issues, was called upon to decide whether continued retention of supplemental jurisdiction was the more prudent course. In this case, this Court has no familiarity with the underlying facts and law—other than the familiarity needed to assess whether it was more sensible for this Court to maintain or to relinquish supplemental jurisdiction. On a go-forward basis, either this Court, or one of its colleagues down the street in state court, will need to start from step one. As such, this Court offers no comparative efficiencies as compared to a state court counterpart. Thus, a scenario like the one described in *Miller Aviation v. Milwaukee County Board of Supervisors*, 273 F.3d 722, 731-32 (7th Cir. 2000),[8] is not present here.

---

[8]   Similarly, the consideration identified in *Myers v. County of Lake, Ind.*, 30 F.3d 847, 849 (7th Cir. 1994), that "one trial per case is enough," so that federal courts should not readily splinter cases and require duplicative trials in both state and federal courts, is not present

17

Similarly, *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir. 1993), variously cited by the parties, supports the idea of relinquishing supplemental jurisdiction here. *Brazinski* confirmed that a district court properly relinquishes supplemental jurisdiction over state law-only claims where, as here, disposition of them is not "straightforward" and would "entangle the district judge in difficult issues of state law." *Id.* at 1182.[9]

Finally, the Court notes that retaining jurisdiction over the state law claims for trial and

---

here, either. That consideration explains why Judge Gettleman did not dismiss the jury that had just heard a multi-week trial after he ruled that Plaintiffs' civil RICO claims were sufficiently baseless that they could not even survive a directed verdict motion at the close of their case. The Court takes no quarrel with that decision, and would have surely followed the same course under the circumstances. However, the question for present purposes is not whether there will be two more trials (one in state court, and another in federal court). The question is whether the one, likely future trial on the state law-only claims will be in state or federal court. And, on that question, the Court believes that trial is best positioned in state court. *Accord, e.g., Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Myers*, 30 F.3d at 850 (teaching that an improvident exercise of supplemental jurisdiction over state law-only cases "injures litigants in other federal cases"). Furthermore, Williams's citation to *Schneider v. TRW, Inc.*, 938 F.2d 986 (9th Cir. 1990), does not counsel a different result. The majority in that case simply affirmed the district court's decision to maintain supplemental jurisdiction, although they acknowledged that "we might well have invited the parties to respond to whether a *Gibbs* dismissal was warranted were we on the district court." *Id.* at 993. The dissent found that the "the district court erred in failing *sua sponte* to dismiss the state claims pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)." *Id.*; *see also id.* at 995 (O'Scannlain, J., dissenting).

[9]     Furthermore, *Brazinski* taught that a district judge retained discretion to decide whether to relinquish supplemental jurisdiction over state law-only claims, even after that district judge had presided over a trial and the federal claims dropped out of the case after trial, such that the parties would be required to incur the expense of an otherwise avoidable second trial if the district court rendered judgment on the state law-only claims. *See id.*, 6 F.3d at 1182. ("[T]here was no rule that if the main claim had not been tried, the pendent claim must be dismissed, and if it had been tried, the pendent claim must be retained, *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); these were at most presumptions . . . ."). As explained, *Brazinski* specifically noted the propriety and prudence of relinquishing supplemental jurisdiction where moving forward would "entangle the district judge in difficult issues of state law." *Id.* at 1182; *see also, e.g., Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994); *Wentza v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993).

18

motion practice is not a step that can be taken without inevitably disadvantaging litigants in other cases in which there actually is a substantial federal interest. In this regard, the question is not whether this Court will work on this case or not work at all; instead, the question is whether this Court (and potentially other federal courts) will work on this case to the exclusion of other litigants' cases—in which there are substantial federal questions, and for a substantial period of time. The resources of the federal courts are necessarily limited, and federal courts must make prudent decisions about how those limited resources are employed. *See, e.g., Myers v. County of Lake, Ind.*, 30 F.3d 847, 850 (7th Cir. 1994) ("An imprudent exercise of supplemental jurisdiction injures litigants in other federal cases, for they must wait in a longer queue."); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994) ("[T]he nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case."). Plaintiffs have, with all respect, not offered any convincing rationale for why this Court should devote weeks of trial time (whether it be a jury trial or bench trial) that otherwise would be available to address multiple other cases squarely within the jurisdiction of the federal courts, whether by way of federal question or diversity jurisdiction. In the time that inevitably would be employed to responsibly try a multi-week case (not to mention the time needed to responsibly render a verdict after a bench trial, or to frame jury instructions that likely would be needed to address unsettled and complex questions of state law), this Court could almost surely resolve several other cases, whether by way of trial, motion practice, and/or settlement conferences. While this Court would be happy to proceed with this case if that seemed like the responsible course, judicial humility (given the fact that this Court has literally no advantage in terms of efficiency, and less legitimacy in terms of its

19

authority to attempt to resolve any unsettled questions of Illinois law), as well as the need to consider the interests of litigants in other cases which undoubtedly implicate federal interests, counsel against displacing those other litigants simply to preside over a trial in this case.

Obviously, decisions about whether to maintain or relinquish supplemental jurisdiction are fact-specific and must be made with consideration of the particular facts presented. On the facts presented in this case, the Court believes, after considering the relevant factors, that continued retention of supplemental jurisdiction is not the most prudent course. There are a number of relevant factors; none of them is dispositive here, but they all individually and collectively point to the same result. The Court accordingly follows the practice of dismissing state law claims without prejudice so that Plaintiffs may pursue them in the Illinois courts.[10]

---

[10]     To the extent Plaintiffs argue that the Seventh Circuit "mandated" this Court's retention of supplemental jurisdiction over the remaining state law claims, such contention is not well taken. The Seventh Circuit did not explicitly, or even implicitly, address supplemental jurisdiction. And, for that matter, the Seventh Circuit had no reason to do so; there is no doubt that section 1367 affords district courts the discretion to decide whether or not to maintain supplemental jurisdiction over remaining state law claims. *Accord, e.g., City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (teaching that a district court, in considering the factors set forth in section 1367(c), "'should consider and weigh [these principles] . . . at every stage of the litigation'"). Because the decision on appeal "did not decide directly or by necessary implication" the issue of supplemental jurisdiction, the Court does "not contradict the law of the case" by considering the issue. *Wyler Summit P'ship v. Turner Broad. Sys.*, 235 F.3d 1184, 1193 (9th Cir. 2000); *accord, e.g., Unity Ventures v. County of Lake*, 894 F.2d 250, 252-53 (7th Cir. 1990); *Maggard v. O'Connell*, 703 F.2d 1284, 1289-91 (D.C. Cir. 1983). The Court also notes that it is well settled that "'questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *In the Matter of Volpert*, 110 F.3d 494, 497 (7th Cir. 1997) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

III.    Conclusion

For the reasons stated, the Court respectfully declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, and they are dismissed without prejudice. If Plaintiffs desire to pursue their various state law claims, they may do so in the courts of the State of Illinois.

So ordered.

_Mark Filip_

Mark Filip
United States District Judge
Northern District of Illinois

Date: _9-15-05_